# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People v. Couch*, 2012 IL App (4th) 100234**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN COUCH, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0234 |
| Filed<br>Rehearing denied | June 15, 2012<br>July 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's postconviction petition alleging that the trial judge was biased against him was properly dismissed as frivolous and patently without merit, since the petition was not accompanied by any affidavits, records or other evidence supporting defendant's claims. |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 05-CF-503; the Hon. Craig H. DeArmond, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, of State Appellate Defender's Office, of Springfield, and Peter A. Carusona and Jay Wiegman, both of State Appellate Defender's Office, of Ottawa, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Michael M. Glick and Joshua M. Schneider, Assistant Attorneys General, of counsel), for the People.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Presiding Justice Turner concurred in the judgment and opinion.
Justice Steigmann specially concurred, with opinion.

## OPINION

¶ 1    In December 2009, defendant, Steven Couch, *pro se* filed a petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-8 (West 2008)), asserting he was denied his right to a fair trial because the trial judge, Judge Claudia Anderson, was biased against him, given that (1) as a youth he had fought with the trial judge's stepson and (2) his mother had publicly condemned the trial judge for having an affair with a married man. Defendant further asserted the trial judge sentenced him based upon facts that she obtained from her current husband, "Glen Anderson." In March 2010, the trial court dismissed defendant's petition at the first stage of postconviction proceedings as frivolous and patently without merit based on the fact the trial judge in question did not have a stepson and was not married to Glen Anderson.

¶ 2    Defendant appeals, arguing that the trial court erred by dismissing his postconviction petition at the first stage because the trial court failed to accept his assertions. Defendant contends that (1) those assertions, if true, would establish the gist of a constitutional claim, and (2) the court was required to accept them as true at the first stage of postconviction proceedings. We disagree and affirm.

¶ 3                                I. BACKGROUND
¶ 4    In August 2005, the State charged defendant with (1) criminal drug conspiracy (720 ILCS 570/405.1 (West 2004)), (2) three counts of delivery of a controlled substance (15 grams or more but less than 100 grams of a substance containing cocaine) (720 ILCS 570/401(a)(2)(A) (West 2004)), and (3) delivery of cannabis (more than 30 grams but not more than 500 grams of a substance containing cannabis) (720 ILCS 550/5(d) (West 2004)). The jury convicted defendant on all counts. Following a September 2007 sentencing hearing, the trial court,

Judge Claudia Anderson, sentenced defendant to (1) concurrent prison terms of 26, 5, and 20 years on three counts, and (2) 20 years in prison on a separate count, which the court ordered to be served consecutively to his 26-year prison sentence.

¶ 5     Defendant appealed, arguing only Judge Anderson (1) erred by not instructing the jury on the affirmative defense of entrapment and (2) abused her discretion by imposing consecutive sentences. In *People v. Couch*, 387 Ill. App. 3d 437, 438, 899 N.E.2d 618, 619 (2008), we rejected defendant's contentions and affirmed.

¶ 6     In December 2009, defendant *pro se* filed a postconviction petition, asserting, in pertinent part, he was denied his right to a fair trial because Judge Anderson was biased against him, given that (1) as a youth he fought with Judge Anderson's stepson and (2) his mother had publicly condemned Judge Anderson for having an affair with a married man. Defendant further asserted that Judge Anderson sentenced him based upon facts that she obtained from her current husband, Glen Anderson. In March 2010, Judge Craig H. DeArmond dismissed defendant's petition at the first stage of postconviction proceedings, explaining as follows:

> "5. [Defendant's] post[ ]conviction petition includes allegations against [Judge Anderson] which are known to be false since they allegedly involve [Judge Anderson's] 'stepson'. This Court has known [Judge Anderson] for over 35 years and knows she has no stepson. He alleges [that she was] previous[ly] marri[ed] to one 'John Smith'. This Court is aware Judge Anderson is still married to the only person she has ever been married to and his name is not John Smith. [Defendant] identifies her current husband as Glen Anderson[,] which is not the name of [her] husband.
>
> 6. As a result, all of the allegations against [Judge Anderson] based on some perceived bias or prejudice because of the false statements regarding her family relationships and [defendant's] alleged involvement in those relationships are frivolous and patently without merit.
>
> * * *
>
> 9. [Defendant's] claims about information *dehors* the record which may have impacted his sentence are based upon nonexistent sources since they purport to come from someone who does not exist, *i.e.*, the trial court's husband 'Glen Anderson.' "

¶ 7     This appeal followed.

¶ 8                              II. ANALYSIS

¶ 9     Defendant argues the trial court erred by dismissing his postconviction petition at the first stage because the trial court failed to accept his assertions. Defendant contends (1) those assertions, if true, would establish the gist of a constitutional claim, and (2) the court was required to accept them as true at the first stage of postconviction proceedings. The State concedes this argument asserting the trial court should not have relied on its own knowledge to dismiss the petition. See *People v. Wallenberg*, 24 Ill. 2d 350, 354, 181 N.E.2d 143, 145 (1962). The State argues this court should affirm the dismissal on the ground that defendant's petition was technically deficient under the Act. We agree with the State.

¶ 10                    A. Proceedings Under the Act and the Standard of Review

¶ 11    A defendant may proceed under the Act by asserting that in the proceedings which resulted in his conviction, a "substantial denial" of his rights occurred under the Constitution of the United States or of the State of Illinois. 725 ILCS 5/122-1(a)(1) (West 2008). The Act establishes a three-stage process for adjudicating a postconviction petition. 725 ILCS 5/122-1 to 122-8 (West 2008); *People v. Andrews*, 403 Ill. App. 3d 654, 658, 936 N.E.2d 648, 652 (2010). At the first stage, the trial court examines the postconviction petition only to determine whether the petition alleges a constitutional deprivation that is unrebutted by the record, rendering the petition neither frivolous nor patently without merit. *Andrews*, 403 Ill. App. 3d at 658, 936 N.E.2d at 652. Section 122-2.1 of the Act directs if the trial court determines the petition is frivolous or patently without merit, it shall be dismissed in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2008); *Andrews*, 403 Ill. App. 3d at 658, 936 N.E.2d at 652-53.

¶ 12    If a petition is not dismissed at stage one, it proceeds to stage two, where section 122-4 of the Act provides for the appointment of counsel for an indigent defendant who wishes counsel to be appointed. 725 ILCS 5/122-4 (West 2008). At the second stage, the State has the opportunity to answer or move to dismiss the petition. 725 ILCS 5/122-5 (West 2008). If the trial court does not grant the State's motion to dismiss or if the State has filed an answer, the petition proceeds to the third stage, where the defendant may present evidence in support of his petition. 725 ILCS 5/122-5, 122-6 (West 2008); *People v. Bland*, 2011 IL App (4th) 100624, ¶ 28, 961 N.E.2d 953.

¶ 13    When, as here, the trial court dismisses a defendant's postconviction petition at the first stage, our review is *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184, 923 N.E.2d 748, 754 (2010).


¶ 14                              B. Proceedings in This Case

¶ 15    Judge DeArmond dismissed defendant's postconviction petition at the first stage as "frivolous and patently without merit" because Judge DeArmond believed he possessed personal knowledge defendant's postconviction claims related to Judge Anderson were not true. Based on Judge DeArmond's comments in the record and the assertions of defendant, it is highly probable defendant's petition is frivolous. It is unfortunate to use scarce resources on such flotsam. However, a judge may not make a ruling based only on what that judge thinks he knows about the personal life of another judge.

¶ 16    The special concurrence discusses a reality-based exception to rules of pleading using the example of an alleged alien judge from the planet Zenon. *Infra* ¶ 29 (Steigmann, J., specially concurring). The Supreme Court of Illinois noted several years ago fanciful allegations that describe fantastic or delusional scenarios are frivolous. *People v. Hodges*, 234 Ill. 2d 1, 13, 912 N.E.2d 1204, 1210 (2009). While defendant's allegations are unlikely, they are not delusional or fantastic.

¶ 17    The defendant's allegations are likely untrue but they are possible. They should be confirmed as untrue rather than relying upon what the special concurrence thinks it knows about what the trial judge thinks he knows about the personal life of another judge. The glib

-4-

"I know it when I see it" (*infra* ¶ 33 (Steigmann, J., specially concurring)) is but a variation on the "well, everybody knows . . ." approach to life. That is not our standard of review.

¶ 18 In *People v. Rivera*, 198 Ill. 2d 364, 372, 763 N.E.2d 306, 310 (2001), the supreme court noted section 122-2.1 of the Act provides for a simplified procedure to ensure the criminal justice system's limited resources are expended where most needed. It is understandable to decry the use of scarce resources to respond to this postconviction petition. However, we must rely on the record, and we may affirm the trial court's judgment on any basis supported by the record. *People v. DeBerry*, 372 Ill. App. 3d 1056, 1058, 868 N.E.2d 382, 383 (2007).

¶ 19 The State argues (1) the petition was untimely, (2) the petition was not verified and (3) the petition was not supported by any affidavits, records, or other evidence. We need only address the third argument. Defendant claimed the allegations in his postconviction petition were true and correct, but he failed to attach any affidavits, records, or other evidence to support his claims. He failed to explain the absence of such documents or other evidence.

¶ 20 The Act requires affidavits, records, or other evidence to support such claims, and if missing, to explain why they are not attached to the petition. 725 ILCS 5/122-2 (West 2008). The failure to do so is fatal to his petition. *People v. Delton*, 227 Ill. 2d 247, 258, 882 N.E.2d 516, 522 (2008).

¶ 21                                         III. CONCLUSION
¶ 22        We affirm the trial court's judgment.


¶ 23        Affirmed.


¶ 24        JUSTICE STEIGMANN, specially concurring.

¶ 25        Every so often, a case comes along that provides a court of review the opportunity to clarify or define the limits of an otherwise uncontroversial legal doctrine. This is one of those cases, and although I agree with the majority's conclusion to affirm the trial court's judgment, I regret that the majority has chosen not to use this case to provide guidance in future cases involving postconviction petitions. Accordingly, I write this special concurrence to offer my views regarding what that guidance should be.

¶ 26        The legal doctrine at issue in this case is the rather uncontroversial rule that all well-pleaded facts in a postconviction petition must be accepted as true. See *Brown*, 236 Ill. 2d at 193, 923 N.E.2d at 759. This doctrine makes good sense, and in my decades of dealing with postconviction petitions, I do not recall any instance in which a court had need to question it. Until now.

¶ 27        In this case, Judge DeArmond dismissed defendant's postconviction petition at the first stage as "frivolous and patently without merit" because Judge DeArmond possessed personal knowledge that defendant's postconviction claims related to Judge Anderson were not *reality-based*. In other words, defendant's claims of constitutional deprivation were based on assertions that Judge DeArmond knew were not true. Thus, Judge DeArmond's dismissal on this ground violated the above legal doctrine because he did not accept as true all of the

well-pleaded facts in defendant's petition. But, as this case shows, this legal doctrine cannot be absolute and inflexible.

¶ 28    When, as here, a trial court considering a defendant's postconviction petition at the first stage knows personally that the petition is not *reality-based*, it would be absurd to require that the court must nonetheless accept the petition's assertions unless they are contradicted by the record. And this court should not accept the notion that the legislature, when enacting section 122-2.1 of the Act, or the Supreme Court of Illinois when construing that section, requires such an absurdity.

¶ 29    Adopting defendant's view that the trial court must accept *all* facts alleged at the first stage of postconviction proceedings that, if true, would establish the gist of a constitutional claim, we would essentially be requiring trial courts to accept any scenario, however ridiculous. For example, under defendant's interpretation of section 122-2.1 of the Act, trial courts would be required to advance to the second stage of postconviction proceedings a defendant's petition that alleged (1) he had personal knowledge that his trial judge was an alien from the planet Zenon and (2) the due-process clause of the United States Constitution guarantees that the judge who presides at his trial must be a human being. In this hypothetical, defendant's second point might well be right. The problem is that his first claim–namely, that he had personal knowledge that the trial judge was an alien from the planet Zenon–is not reality-based. And so it is with the claims underlying defendant's postconviction petition in this case.

¶ 30    This court should conclude that the rule that the trial court must accept all well-pleaded facts as true at the first stage of postconviction proceedings contains the reality-based exception discussed herein. I would expect this exception to apply only in rare cases. But, as this case demonstrates, such cases can arise, and when a trial court is confronted with a postconviction petition that is not reality-based, the court should not be required to look the other way, advance the petition to the second stage, and go to the bother and expense of appointing counsel for the petitioner. Anything less would basically allow future petitioners to circumvent the first stage of postconviction proceedings by "well pleading" any allegation they could dream up.

¶ 31    I deem such a conclusion consistent with the observation of the supreme court in *People v. Rivera*, 198 Ill. 2d 364, 372, 763 N.E.2d 306, 310 (2001), that section 122-2.1 of the Act provides for a simplified procedure to ensure that the criminal justice system's limited resources are expended where most needed. Those scarce resources ought not be expended in response to postconviction petitions that are not reality-based.

¶ 32    I acknowledge that in the context of postconviction petitions, this special concurrence is using the term "reality-based" for this first time and not defining it. However, a definition or further clarification is not necessary. Instead, I am reminded of the observations Justice Stewart made in his concurring opinion regarding hard-core pornography. In *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring), Justice Stewart wrote the following:

> "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description [of 'hard-core' pornography]; and perhaps

I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that."

¶ 33      In this case, the question was whether defendant's postconviction petition was reality-based. It was not. To paraphrase Justice Stewart, I know it when I see it, and to his credit, so did Judge DeArmond.